United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 12, 2007**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the F ifth Circuit

_____

m 06-70017

_____

CARLTON AKEE TURNER,

Petitioner-Appellant,

VERSUS

NATHANIEL QUARTERMAN,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
m 3:04-CV-2232-D

_____

Before SMITH, GARZA, and PRADO,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Carlton Turner applies for a certificate of appealability ("COA") from the denial of his petition for writ of habeas corpus pursuant to

28 U.S.C. § 2254. Because he cannot make a substantial showing of the denial of a federal constitutional right, we deny a COA.

I.

The evidence presented at trial established that Turner shot and killed his parents in their home and placed the bodies in the garage. He

confessed, and his claim of self-defense contradicted previous claims that he had nothing to do with the murders. A jury found him guilty of capital murder and sentenced him to death.

During voir dire, the prosecutor discussed with prospective jurors the issue of parole eligibility. During interviews with at least six prospects, after stating that the court would not allow the jury to consider parole eligibility in deciding punishment, the prosecutor speculated that parole consideration was barred because the legislature could change the parole laws at any time, thereby making it inapplicable to Turner. The prosecutor went on to attest that he had seen several parole law changes during his tenure. Turner's trial counsel did not object.

In the sentencing phase, the court instructed the jury that Texas parole law required Turner to serve at least forty years before being eligible for parole, but that the jury was not to consider Turner's parole eligibility in determining his sentence. The court did not speculate on whether the parole law might change.

Turner's conviction was affirmed on direct appeal. *Turner v. State*, 87 S.W.3d 111 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 965 (2003). Turner timely filed a state petition for writ of habeas corpus. Deciding that a hearing was unnecessary, the state habeas court entered findings of fact and conclusions of law recommending that all relief be denied. The Texas Court of Criminal Appeals denied relief in an unpublished order based on those findings and conclusions and its own review of the record. *Ex parte Turner*, No. 59,908-01 (Tex. Crim. App. 2004). Turner filed a federal habeas petition based on seven grounds, including that the prosecutor's comments violated his rights under the Sixth, Eighth, and Fourteenth

Amendments. The district court rejected Turner's constitutional claims and declined to grant a COA.

On appeal, Turner raises all seven issues asserted in the district court, seeking a COA.[1] First, he claims he was denied his right to a fair and impartial trial by the prosecutor's statements. Second, he claims that he was denied his right to effective assistance of counsel when his lawyer failed to object to the prosecutor's statements during voir dire. Third, he claims that the court's instructions to the jury that it was not to consider parole eligibility deprived him of his right to a fair trial. Fourth, he asserts that the court's instructions at sentencing contained vague and undefined terms that violated his right to a fair trial. Fifth, he claims that the Texas death penalty statute violates his right to a fair trial by not informing jurors that failure to reach a unanimous verdict on any issue will lead to life imprisonment. Sixth, he claims that the Dallas

---

[1] Throughout his briefing, Turner asserts that he "incorporates by reference the arguments previously made relevant to his claim in his brief in support of his original federal suit." We do not consider issues that are not adequately briefed. *See, e.g., Summers v. Dretke*, 431 F.3d 861, 870 (5th Cir. 2005) ("Summers directs this court to the briefing before the district court for support of his request for a COA as to these claims. We decline this request. By failing to adequately brief these issues, Summers has waived them."), *cert. denied*, 127 S. Ct. 353 (2006); *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005) ("Federal Rule of Appellate Procedure 28(a)(4) requires that the appellant's argument contain the reasons he deserves the requested relief with citation to the authorities, statutes and parts of the record relied on.") (internal citations omitted), *cert. denied*, 126 S. Ct. 1347 (2006). Turner waives the arguments he has not briefed.

County venire selection process violates his right to an impartial jury containing a representative cross-section of the community. Seventh, he asserts that the cumulative effect of these violations denied him due process.

## II.

In ruling on a request for a COA, we are constrained by statute. Absent a COA, we have no jurisdiction to entertain the merits of Turner's claims on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must show that the state court's resolution of his case was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[2] To grant a COA, we need not decide the ultimate merits of the underlying issue in the petitioner's favor, but rather we ask only whether he has made "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claim or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Our role is to determine not whether Turner is entitled to relief, but whether the district court's conclusion that the state court adjudication was not contrary to or an unreasonable application of clearly established federal law is one about which jurists of reason could disagree or as to which jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further.

## III.
### A.

Turner argues that the prosecutor's statements to jurors during voir direSSwhich suggested that Turner might not serve forty years before becoming eligible for paroleSSwere a violation of his rights under the due process clause of the Fifth Amendment. He relies on *Simmons v. South Carolina*, 512 U.S. 154 (1994), in which the Court ruled that due process affords a criminal defendant the right to answer future dangerousness allegations by asserting that he will not be eligible for parole. Turner asserts that *Simmons* recognizes a due process right to provide the jury with accurate information regarding parole eligibility, which cannot be undermined by inaccurate information from the state.

The district court rejected Turner's claim, noting that the state habeas court had found that the factual basis for the claim was incorrect. The state habeas court found that the prosecution's statements actually reinforced the instruction that Turner would serve at least forty years, and that the prosecutor confirmed to the jurors that the minimum period applied. State Hab. Find. Nos. 9, 22-23. On habeas review, federal courts must presume that the state court's factual findings are correct, and Turner has not attempted to present clear and convincing evidence that the findings were er-

---

[2] *See also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) ("Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.").

roneous.[3] Alternatively, the district court noted that the state habeas court had concluded that *Simmons* applies only in situations in which a defendant is statutorily ineligible for parole, and the district court found that this conclusion was not an unreasonable application of clearly established federal law as determined by the Supreme Court.

In *Simmons*, a majority, in two separate plurality opinions, held that a defendant must be allowed to rebut a state's showing of future dangerousness with accurate information regarding his ineligibility for parole, at least where the only alternative sentence is life without parole. *See Simmons*, 512 U.S. at 171; *id.* at 178 (O'Connor, J., concurring in the judgment). Three of the seven Justices who concurred in the judgment noted, however, that "the State may also (though it need not) inform the jury of any truthful information regarding the availability of commutation, pardon, and the like." *See id.* at 177 (O'Connor, J., concurring in the judgment).

Several years later the Court revisited the issue in the context of a defendant who was eligible for parole at the time of sentencing. In *Ramdass v. Angelone*, 530 U.S. 156 (2000), a majority, in two plurality opinions, concurred in the judgment that *Simmons* applies only where there is no possibility of parole if the jury decides the appropriate sentence is life in prison. *Id.* at 169; *id.* at 181 (O'Connor, J., concurring in the judgment). Thus, the current state of federal law as elaborated by the Supreme Court is that due process requires a

jury to be able to consider a defendant's parole eligibility only where the alternative punishment is life without parole.

The state court found that Turner's argument was not factually correct and that the prosecutor's statement that the law might change merely confirmed the trial court's instruction that Turner would not be released for forty years. Because Turner has not demonstrated that this factual finding is clearly erroneous, we deny a COA.

Alternatively, even if Turner could show that the state court's finding was erroneous, he would need to demonstrate that the state court unreasonably applied clearly established federal law as determined by the Supreme Court. As discussed above, under the Supreme Court's precedents, a defendant has a due process right to present parole eligibility to the jury only where he is not eligible for parole at the time of sentencing. The Court intended to limit *Simmons*'s application to states that allow sentences of life without parole. *See Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998). Because Turner is eligible for parole, jurists of reason would have to agree that it is not a violation of clearly established federal law for the state court to find that the protections of *Simmons* are not applicable. We decline to issue a COA on this issue.

### B.

Turner protests his attorney's failure to object to the prosecutor's statements. He reasons that under Texas law, *see, e.g., Valencia v. State*, 946 S.W.2d 81 (Tex. Crim. App. 1997), a prosecutor cannot argue contrary to the law contained in the jury instructions and may not invite jurors to disregard the law. Turner suggests that his counsel's failure to object to the statements amounted to ineffec-

---

[3] *See Summers*, 431 F.3d at 868 ("A state court's factual findings are presumed to be correct. Before a federal court, a petitioner has the burden of rebutting this presumption with clear and convincing evidence.") (internal citations omitted).

tive assistance of counsel under the Sixth Amendment.

The state habeas court found that Turner was unable to demonstrate ineffective assistance, because he was unable to show that his counsel's objection would have been improperly overruled or that the prosecutor's statement was an inappropriate explanation of the parole law instruction. State Hab. Find. No. 11. The court concluded that Turner's counsel was not deficient for failing to proffer meritless objections to the statements.

To succeed on a claim of ineffective assistance, a defendant must make two showings:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If a state court has already rejected an inefficient-assistance claim" and "the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough*, 540 U.S. at 5.

To satisfy the first step of *Washington*, Turner must demonstrate that his counsel's performance was deficient; he is unable to make that showing. For Turner's counsel to be deficient in failing to object, the objection must have merit under Texas law. On direct appeal, the Texas Court of Criminal Appeals concluded, after reviewing several of the prosecutor's comments, that Turner had quoted them "out of context" and that "we cannot say that counsel was ineffective for failing to object to the prosecutor's voir dire comments since, viewed in the context of the entire voir dire, *they were not objectionable*." *Turner v. State*, 87 S.W.3d 111, 115-16 (Tex. Crim. App. 2002) (emphasis added).

This is an authoritative statement from the state's highest criminal court that Turner's proposed objection would have been meritless. Turner's counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless.[4] Turner cannot make a substantial showing under *Washington*, so a COA on this issue is denied.

### C.

Turner avers that the state trial court violated *Simmons* and his right to due process by informing jurors that they were not to consider the possibility of parole. Turner acknowledges that in *Ramdass* the Court held that defendants who are eligible for parole have no due process right to a *Simmons* instruction informing the jury about the defendant's ineligibility for parole. Nonetheless, Turner argues that in this case, where the state court did inform the jury that Turner would not be eligible for parole for forty years, it was a violation of due process and *Simmons* for the court then to inform the jury not to consider parole eligibility.

The state habeas court rejected this claim,

---

[4] *See Green*, 160 F.3d at 1037 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness.").

finding that the protections of *Simmons* do not apply where a defendant is parole eligible and that Texas courts have long held that parole eligibility is not a matter for capital jury consideration. State Hab. Find. Nos. 75-76. The court also concluded that Turner could not show harm, because in deciding future dangerousness in Texas the jury is allowed to consider dangerousness to the prison population and thus parole eligibility is irrelevant. State Hab. Find. No. 82.

It is undisputed that the due process right to inform the jury about parole ineligibility recognized in *Simmons* does not apply where a defendant is eligible for parole.[5] *Simmons* does not establish a right to inform the jury accurately about a defendant's expected parole eligibility, but rather a right to inform that he is ineligible for parole. Turner is unable to make a substantial showing that the state habeas court's conclusion was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, and a COA is denied.

D.

Turner urges that the jury instructions were unconstitutionally vague, depriving him of a fair trial, because they failed to define "probability," "criminal acts of violence," and "continuing threat to society." The state habeas court rejected this challenge, noting that these terms apply not to the aggravating factors that determine death eligibility, but rather to the special punishment issues that determine whether the death penalty is appropriate. State Hab. Find. Nos. 91-92. The court cited several state cases that demonstrate that a re-

fusal to define these terms poses no constitutional problems.[6]

In *Tuilaepa v. California*, 512 U.S. 967 (1994), the Court distinguished two determinations made by capital juries: eligibility for the death penalty and selection of the death penalty. *Id.* at 971. The Court noted that at the eligibility step, the jury must find at least one "aggravating circumstance (or its equivalent)" and that this circumstance must not be "unconstitutionally vague." *Id.* at 972. By comparison, at the selection step, the jury must be allowed to make "an individualized determination" and to consider "relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime." *Id.* In this second step, the jury may even be given "unbridled discretion in determining whether the death penalty may be imposed." *Id.* at 979-80 (citations omitted).[7] As the district court recognized, this court has rejected claims alleging the vagueness of these very terms when applied to selection decisions.[8]

_____

[6] State Hab. Find. No. 93 (citing *Cantu v. State*, 842 S.W.2d 667, 691 (Tex. Crim. App. 1992); *Caldwell v. State*, 818 S.W.2d 790, 798 (Tex. Crim. App. 1991)).

[7] *See also Buchanan v. Angelone*, 522 U.S. 269, 276 (1998) ("[O]ur decisions suggest that complete jury discretion is constitutionally permissible.")

[8] *See, e.g., Hughes v. Johnson*, 191 F.3d 607, 615 (5th Cir. 1999) ("We similarly have rejected contentions that 'probability' and other terms included in the statutory special issues are unconstitutionally vague.") (citations omitted); *James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993) (holding that terms used in special issues, including
(continued...)

_____

[5] *See Ramdass*, 530 U.S. at 169; *id.* at 181 (O'Connor, J., concurring in the judgment); *Woods v. Cockrell*, 307 F.3d 353, 361-62 (5th Cir. 2002).

Turner claims that *Ring v. Arizona*, 536 U.S. 584 (2002), which he cites for the proposition that any fact that must be proved to render a defendant eligible for the death penalty must be proved beyond a reasonable doubt, compels a different result. This argument misconstrues the Texas capital penalty framework.

Texas capital juries make the eligibility decision at the guilt-innocence phase. *See, e.g., Johnson v. Texas*, 509 U.S. 350, 362 (1993). The terms about which Turner complains are not invoked until after the defendant has been judged death-eligible and the jury is being instructed how to decide whether selection of the death penalty is appropriate. *Ring* is inapposite to any discussion of the constitutional requirements of the selection phase. Because Turner is unable to point to any clearly established federal law under which the terms of the Texas sentencing instructions could be unconstitutionally vague, he is unable to make a substantial showing of the denial of a federal constitutional right, and we deny a COA.

E.

In this court, Turner has not briefed his claim that his Eighth Amendment and due process rights are violated by the Texas death penalty statute's failure to inform jurors that the effect of a failure to reach a unanimous verdict is to impose life imprisonment. Instead, he concedes that this argument is squarely foreclosed by circuit precedent; he maintains it only to preserve the error for further review.[9] We deny a COA.

F.

Turner argues that the Dallas venire selection process disproportionately represented (1) Hispanics, (2) persons between the ages of 18 and 34, and (3) persons from households with incomes under $35,000.[10] Turner claims that he was prejudiced by the under-representation of these groups, which deprived him of a jury venire composed of a fair cross-section of the community.

The state habeas court found that Turner had failed to raise his venire objection at trial and therefore had waived the error for collateral review. State Hab. Find. Nos. 109-10 (citing *Ex Parte Dietzman*, 851 S.W.2d 304, 305-06 (Tex. Crim. App. 1993)). Alternatively, the court found that Turner's claims are meritless.

With regard to the latter two categories, the court found that Turner had failed to demonstrate that they constitute distinctive groups in the community. State Hab. Find. Nos. 120-25. With regard to Hispanics, the court found that Turner had failed to demonstrate that there was a disparity between the percentage of Hispanics in the jury pool and the percentage of Hispanics who were eligible for jury service. State Hab. Find. No. 129. The court also found that Turner had failed to demonstrate that members of any of these groups were systematically excluded from jury service. State

---

[8](...continued)
'probability,' 'criminal acts of violence,' and 'continuing threat to society,' "are not so vague as to require clarifying instructions.").

[9] *See Alexander v. Johnson*, 211 F.3d 895, 897 n.5 (5th Cir. 2000) (per curiam) (rejecting identical Eighth and Fourteenth Amendment arguments).

[10] In support of this proposition, Turner cites a series of newspaper articles in the *Dallas Morning News* by Mark Curriden.

7

Hab. Find. Nos. 132-39.

The federal district court noted that the state court had determined that Turner's claim was procedurally defaulted under Texas's "contemporaneous objection" rule. The federal court found that the state habeas court had clearly and expressly declined to review Turner's venire claim because of the procedural bar; the court noted that the rule is well established and applied evenhandedly by Texas courts. Therefore, the rule is an independent and adequate state ground for decision, precluding federal review. Because Turner failed to allege cause and prejudice in federal court, and there was no evidence suggesting that failure to consider the claims would result in a fundamental miscarriage of justice, the court found that Turner's venire claim was procedurally defaulted.

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Turner must make a substantial showing that the district court's procedural ruling was incorrect before we can consider the merits of his underlying venire claim.

Where a prisoner procedurally defaults his federal claim in the state habeas court, federal habeas review is barred unless he can demonstrate cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "[T]he Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims, and is therefore an adequate procedural bar." *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000). In federal district court, Turner made no attempt to show cause or prejudice in regard to the procedural fault, nor did he allege a fundamental miscarriage of justice. The district court correctly ruled that his venire claim is procedurally barred. Because jurists of reason would have to agree with the district court's procedural reasoning, we cannot reach the merits of Turner's claim, and a COA is denied.

G.

Turner argues that the cumulative effect of the afore-mentioned constitutional violations denied him due process of law. "[F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). As is apparent from this standard, and as this court has stated explicitly, where individual allegations of error are not of constitutional stature or are not errors, there is "nothing to cumulate."[11]

---

[11] *See Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993); *see also Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000) ("Miller has not demonstrated error by trial counsel; thus, by definition, Miller has not demonstrated that cumulative error of counsel deprived him of a fair trial."); *United* (continued...)

8

Turner has failed to make a substantial showing of the denial of a federal constitutional right regarding his first four claims, and his final two claims are procedurally defaulted. Because he has pointed to no errors that involve matters of constitutional dimension and that are procedurally preserved for review, he has presented nothing to cumulate. A COA is denied.

In summary, Turner has not shown that any of his claims is debatable among jurists of reason, that a court could resolve them in a different manner, or that the questions are adequate to deserve encouragement to proceed further. Because he has failed to make a substantial showing of the denial of a constitutional right, his request for a COA is DENIED.

---

[11](...continued)
*States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."), *petition for cert. filed* (Nov. 30, 2006) (No. 06-8178).